I'm usually in the other courtroom and it's more like candlelit dinner so this you don't look too closely I prefer the the candlelight on my face haha anyway welcome to the Fifth Circuit we have an interesting docket albeit short this observe our rules which are that when the yellow light comes on you have two minutes left in your argument when the red light comes on we ask you to conclude as quickly as possible we are familiar with the briefs and record excerpts we've not necessarily read the entire record so we do appreciate record citations when those are appropriate we call the first case of the morning number 2360270 Lyon Elastomers v. NLRB we'll hear first from Mr. Kupp morning your honors I'm here today to implore this court implore this panel to regarding what the NLRB did to our client Lyon Elastomers we believe that unequivocally that the NLRB and what we have referred to as the decision Lyon Elastomers to violated and egregiously violated ran roughshod over the due process rights of my client by not allowing and in fact specifically rejecting the company to address a sea change in the law when they when the board decided Lyon Elastomers to and reverted to the Atlantic Steel standards for determining egregious conduct of an employee at work we believe that is the first and could be the only reason why this court should reverse Lyon Elastomers to and send this case back down to the board and or to the administrative law judge to make a finding to make a different finding and to at least give Lyon Elastomers the opportunity to present its case and before the tribunal exactly what relief are you seeking in that regard you want to rehear the entire case you want you think the General Motors formula should be applied just what are you absolutely we do believe General Motors should be open and what's your best authority for for saying that the fact that General Motors was the law of the law at the time the fifth circuit heard it before yeah it was a law when that was a law when when General Counsel petitioned for remand from the Fifth Circuit down to the board that was a law General Motors was a law at no point was was Lyon Elastomers put on notice that the General Counsel was going to argue to completely reverse General Motors do you think the General Counsel thought so at the time nothing in their briefing it indicated that and in fact the board just two weeks before we submitted or the party submitted joint briefs and on September 3rd 2021 affirmed General Motors to affirm a remand from the District Columbia District Court District Court of Columbia Constellium Constellium decision to and they cited General Motors as support for the boards cited General Motors for support of reaching a decision in favor of the employee in that case that was two weeks before the party submitted briefs to the board we had no notice that the General Counsel was going to argue that General Motors which is provides the right line standard for determining these cases was going to be rejected of course we believe General Motors should be reinstated or should be the law we think that General Motors is as the rational relation to the act I will point out that this court has not been shy in the past both in the DR Horton case in 2013 and in the Tesla case to to reverse decisions by the board in which their policymaker and decision-making had no rational relationship to the act of course do Horton dealt with arbitration of it provisions on the Federal Arbitration Act Tesla dealt with the ruling by the board that uniform policies were presumptively unlawful under under the NLRA and both those decisions were reversed so yes we believe that this court this panel should reverse line in the blasphemous to and at the very least send that decision back to the board and to the ALJ to make a decision consistent with General Motors which was the law the denial of due process would be the board's refusal to allow you to file a reply brief to the council's brief on simultaneous breeze let's let me back up for you you file a brief that says here's how General Motors applies to our case they file a brief that says General Motors ought to be out we need to go back to Atlantic Steel that's right and then we applied we petitioned the board to allow us to respond to that right so you file a response if we if we send this back to do that I mean wouldn't the board still be free to do exactly what it did I mean I guess they could it's I'm not discounting the importance of hearing from the party before they do that but they could have judge I mean there's there's no other guardrail to use your word to keep the board from changing law midstream so to speak well other than the fact that they need to let the parties be heard on it I'm sorry I have allergy so I sound funny funnier than usual so why wouldn't they just go Atlantic Steel well they could but again proceed with the General Motors position if it's remanded they could they should proceed we would follow your brief responding that they wouldn't let you file before right yeah that's right yeah we would argue that the General Motors position is the position that's more rationally related to the act at least give us an opportunity to be heard on it they did not do that they just wholesale determined that we're not going to hear from the party on it we petitioned to allow them do it we gave them advanced notice we didn't wait for a decision to come out we gave them advanced notice that this is what we want to address based on the court's decision in line the last rumors to which is the one we're dealing with here they didn't do it and we believe that is the guardrail that this court needs to put up that the government agency just cannot do what they want to do and really run roughshod over the due process rights look it may not have articulate what that what that guardrail sounds like in other words how do we instruct the NLRB when to do it and when not to do it without dictating their day to day procedures or their their statutory authority I think it's very easy I think you say let the parties be heard on the issue if you're gonna if you're gonna have a sea change in law like this let at least a party that's being impacted be heard I mean is there I guess what I'm getting at is there is their discretion on their part as to when to allow the parties to be heard again or file a reply brief or that sort of thing or can they deny it what is the bandwidth there well they did deny it I know they denied it but what's the bandwidth that we're to allow them to consider these kinds of requests going forward well I think the bandwidth is that the party being impacted adversely impact by a complete change and reversal of the law needs to be heard on the issue before these needs to be notified and should be allowed to be heard on the change that did not happen here that absolutely did not happen they pre the in our opinion the board pre-ordained a decision that they were going to reverse general motors and go back to the Atlantic still standards they did not provide us any notice of that general counsel didn't provide any notice of that general notices motion to remand didn't provide any notice of that the course I was going to ask about their motion to remand there's no telegraphing in that motion anything other than well the law has changed we need to change we need to apply the change law to this case that's right the remand the motion for remand saying that they wanted to remand to determine the judicial estoppel yes yes yeah absolutely I think that you know in this case there could be I mean they if the general counsel would have said we do not believe that on the motion for remand we do not believe that general motors is rightly decided and we want to make a we want to argue for a reversal of that new back to the Atlantic still standards line of lasters may very well have objected to that at the time we didn't we consented to that because we did believe that the general motors decision which came out during dependency of the appeal was the law of the land that's what the board needed to decide this case under which incorporates the right line standard of determining I assume general motors was decided on the basis of due process right well yeah partly I mean General Motors itself when the General Motors board came out the the three-member panel decided that the old Atlantic still standard which was in 1979 case by the way which was determined well before Mayor Tor and some of the other important title 7 cases dealing with hostile work environment and other types of issues under federal and state anti-discrimination laws the the General Motors panel decided that hey look this is not a sustainable way to view these cases it's loggerheads between protected section 7 activity and the company's but it's obligation to deal with laws I mean is it even appropriate for us to get into the merits of the General Motors versus Atlantic steel dispute but we believe so and we argue that in our briefs your honor we believe it is appropriate but we'd have to fly right by the due process violation to do that right I think it's an alternative we have we set forth that as certainly it is an as an alternative form of relief that reinstating Atlantic steel was an error and not rationally consistent with the act given the fact of the long litany of cases decided under title 7 and other state the federal and state discrimination since that point they cite many many cases that have applied Atlantic steel over the years including from this circuit did any of them say that Atlantic steel was irrational or inconsistent with the law not that I'm aware of your honor yeah but the the General Motors decision by the three went through a bunch of cases and they cited what they refer to as a law alarming decisions that have come out under the Atlantic still based on this concept that title 7 activity is inseparable from egregious conduct by an employee you know they it's excused what did General Motors came out and said no we can separate those two and it's that's not an unreasonable way to look at things and it also balances the right of employees to engage in sex and that seven activity with the rights of in other areas and there's a and we signed it in the brief there's there's cases that say look the NLRB and in fact that's what the court held in D.R. Horton and said that the board's deference in deciding cases cannot conflict with federal statutes and policies unrelated to the NLRA and that's what this board this what this court held and I think Jones I think you were a part of that panel in 2013 but the that's the D.R. D.R. Horton case dealing with arbitration and I would say that Tesla the Tesla decision is the is the very same so we believe that due process requires reversal we believe that they ignored the mandate from this court which they should not be allowed to do when they just wholeheartedly made the C change in the law without giving us notice so we have due process they exceeded the mandate how do you get there though the mandate the opinion was only one sentence wasn't it it was just remanded so how do we how do you get to the to the argument that or the the position that the mandate was violated I think you look at the the petition for remand itself but by the I think it would have been different had the general counsel said we would like to petition for remand because there needs to be a change in law and we don't agree with General Motors they didn't do that their petition their own petition for remand said we want this case remanded or the case should be remanded to argue the effects of General Motors and so the board what the board does well and what they argue on the other side is well they did consider that they considered no effect because we're not going to keep that law anymore we're going to revert to the Atlantic still standards okay we get that we weren't heard on that issue we were not allowed to breathe you're back in due process now I'm just asking about the the elasticity of the court's mandate to bind or you know prescribe what the NLRB could or couldn't consider on yes I wish I wish the the mandate itself would have been a little bit clearer in that it wasn't it just simply said it's just an order granting the motion it was and that's why I think you have to revert to what the motion said and what the general counsel was arguing there regarding your law for that or your authority for that as the approach we're supposed to take well I mean it's it yeah they have there has to be there has to be it's a judicial estoppel on their part they sought relief from the court remand based on a certain fact and then they get which is the law has changed we want to apply the right law then they get back to the a the board and they say oops we're gonna change the law that's in a way and we and what I'm here is that we somehow what you're gonna hear from those side is that we somehow waive that argument there is no way we waive that argument we went to the board we asked to brief this very issue and they refused and in fact they predetermine the issue in the line elastomers to decision let me um this was he was discharged after he refused to sign the last-chance agreement that was presented to him okay there was a last-chance agreement that was presented dealing with various conduct that mr. clone exhibited in the workplace he refused to sign in fact he refused to read it and there was and there was no evidence by the way established that the there was any disparate treatment of mr. Cologne compared to anybody else at that worksite your honors I see my time is up yep you have your battle thank you thank you okay mr. Fitzmorris your honors may it please the court Brady Francisco Fitzmorris for the National Labor Relations Board very briefly and before getting into some of the legal issues that have been discussed in this case I'd like to take a quick moment to remind the court of the core of the case which is a routine application of a decades-old standard a court-approved standard to firmly established facts you know what you get your brief and your opinion the board's opinion here keep talking about clutching pearls oh dear they overturned decades of precedent well it seems to me when certain administrations have been in charge of the NLB RB they turn over the contractor rule they turn over the trip tip rule they turn over uniform rules they turn over voting rules and then they get upset when somebody else overturns for decade so don't give us that argument I understand your honor this is a case dealing with a standard that's been changed as brother counsel mentioned the Atlantic Steel standard had been in place for quite some time and the board saw fit to overturn Atlantic Steel in General Motors well but then you requested to remand this case to go apply General Motors but that's not what the agency did at all that's not what the general counsel did at all so basically this is the classic surprise switcheroo that we would invalidate all the time when agencies do that without affording notice opportunity all those Administrative Procedure Act standards I realize the NLRB does its thing through adjudication right where's your authority to do the same thing that you couldn't do if you were making rules I thank you for your question your honor I'd like to you're welcome briefly briefly correct the record there was some discussion earlier about the motion for remand and the court's order granting remand so in this case the board filed a motion for remand but that motion did not say it was for the board to apply General Motors it did not say it was requesting remand to see but what else what else did it mean well what it said your honor it was it said said remanded I understand that but it was based on a representation by were you representing the board at that time yes your honor so you represented one thing to the board to this court yes what I represented what the board represented was it sought remand to determine whether General Motors affects the out you ever done this before I mean I he calls it surprise switcheroo which under our governing authority is a term of art but what about sandbagging have you ever sandbagged somebody on remand before like that no your honor and respectfully I don't believe that the board did so in this case the question where in the motion to remand did you say the board wanted to reconsider General Motors and revert to the old standard the board's motion did not say that where did it say that the board thought General Motors was infirm and needed to reconsider what standard would apply the motion did not say that's not what it said at all in fact the party opposite agreed to the motion which basically if it was signing its own death warrant would probably not have done that correct I respectfully disagree that it's a death warrant well call it what you want it's a surprise switcheroo it's sandbagging it's nowhere in the motion to remand that the board was going to throw out the new standard that had just been implemented they wanted to apply the new standard that's what it represented to this court respectfully your honor I don't believe that's what the motion represented well we'll read the motion and figure it out yes of course you do and I'm simply asking that you look at the language in the motion but then you we did and then you go back to the board and the board gives them even if the board had authority to do that the board gave them no opportunity to say wait a minute don't reverse General Motors now how do you justify that so I would say your honor that their line did have an opportunity in fact it had two opportunities to address that issue it had the first opportunity when it filed its statement of position on remand to the there was just it was they were negligent and not apprehending the issue and failing to raise it I'm not levying any allegations of of course you can't because the other reading of that is the motion to remand nowhere hinted that this would be the issue until the General Counsel filed its statement of position again I'll rest on the language of the motion to remand which proposed a yes or no question to determine whether General Motors affects the analysis in this case the board addressed that issue and answered it in the negative no General Motors does not affect the analysis here because it is overturned and we are returning to the Atlantic Steel Standard well how could you how could you legitimately return to the board didn't do that two weeks earlier your honor's referencing Constellium which was a case on remand from the DC Circuit in which your honor's correct the board applied General Motors General Motors was in effect for approximately three years give or take before it was overturned in this case in that case in Constellium no party urged the board to overturn General Motors that means you the well I was not a part of that case and I was not a part of drafting the General Counsel's normally normally you apply the law on appeal right that was what in other words if we if if a case was pending on appeal before us and the Supreme Court does have made a decision that might affect it we would remand to the district court to reconsider under the Supreme Court's new authority certainly and nobody would argue well that authority doesn't really apply now why should what binds the article three courts in regard to vertical authority shouldn't also bind the agencies as a matter of due process there's got to be some consistency hasn't there I agree that must be consistency and I think your honor draws a useful contrast between Constellium in the instant case in Constellium the DC Circuit analyze the issues analyze the facts and the standards and remanded with instructions for the board to address any potential conflict between its own standards and other anti-discrimination laws with those instructions so the board did so it's our fault it's our courts fault for not instructing properly and just taking the board at its word absolutely not your honor it's not an issue of blame it's an issue of article three courts can of course constrain an agency's discretion on remand well we can constrain it right now you have the authority to do so yes your honor so what you're telling us is going forward it is our fault we should be writing detailed orders to the NORB instructing them exactly what they can and can't do your honor I'm focusing only on this case well exactly me too but it was an agreed motion to remand which we get all the time when both parties come in and request we want to reconsider this there's new evidence about that could we send it back for the other to correct some error before we can really decide the case on the merits that's what happened here and what in the NLRB did was take it and run with it to have a sea change in the law I would like to surprised I think you said that there was an instance of surprise in this case I would push back on that respectfully I mean this was a case where following the remand of course the board invited statements of position before statements of position were filed about a month before that respectfully you're not arguing what the board said in footnote 69 it said our dissenting colleague faults the board for not permitting the respondent to reply to the general counsel statement of position here following remand in addition to filing its own state of statement of position the board then goes on in several paragraphs to explain hey lion loses anyway and therefore even if we're applying the new standard too bad they lose they don't argue that lion forfeited its opportunity they don't argue that lion was in fact on notice which both of which arguments you're trying to use to justify the board I I'm only trying to which is post hoc justification which you know is not allowed I understand that your honor but the court expressed an understanding that lions counsel was surprised and I'd like to correct that because I don't think that's supported by the record at record page 1022 true the board should have said they they should have seen this coming and they should have put it in their statement of position now you're arguing their motion to reconsider or something like that was too late well well the board did point out that line had an opportunity to be heard first in a statement of position and second by filing a motion for further briefing they requested a reply brief which was denied by the board yes there is no ruler regulation requiring that a reply brief be accepted at that so the board deliberately deprived them of due process no your honor the board denied a request for a specific brief at that time which was not required by any rule or regulation at all times lion had an opportunity to file a motion for his dissent from this case explicitly invited them to do so and they chose not to where's your law that says they've got to do that to preserve the issue for appeal well your honor I'm raising this point with regard to lines due process claims that they had no opportunity to be heard they did have an opportunity to be heard by filing a motion for reconsideration and they did not take that opportunity but that's not a waiver that's what that's what our DR Horton decision said okay so with regard to the scope of the mandate let's say that this court we've done enough about the mandate let me ask you about if you don't mind if my colleagues don't mind on the merits I don't I don't understand the ALJ's if we were to get their interpretation of the last chance agreement so would you explain why the when he filed three or four grievances within the last several months before that last chance agreement not one of them had any merit why they couldn't get upset about that because every time the grievance someone has to come in and investigate that itself may upset the ordinary work processes both by taking time out of the workday by a diversion of resources of the human resources and also by the people who he talks to who are the union members who say no I didn't say that so why why aren't those bona fide bases for last chance to two responses to that your honor first actually mr. Cologne did file a number of grievances during that time period that were either meritorious or were not problematic in lion's eyes and so for that reason we're not listed in the last chance agreement so it's not the case that he had an unbroken string of grievances that lion found to be problematic because they purportedly contained misstatements secondly there were at least four yes there were grievances that lion listed in its last chance agreement the standard when it comes to grievance filing is whether the conduct is indefensible that's because this grievance filings at the core of when you say that someone said that the company said that the union members were to sabotage the company and it turns out when you run that to ground out of three or four sources but that's just flat not true I mean that's a pretty explosive comment I would disagree with your honors characterization of the investigation that lion performed in that instance and in others what lion did was they interviewed the management official who had been accused of sabotage recorded their denial in that exact instance the human resources representative admitted that it was a one man's story against another's one man's word against another and they concluded because mr. cologne and the management official did not agree that the management official had said that explosive comment they concluded that mr. cologne had made a misrepresentation and not only misrepresentation but an intentional fabrication of fact the board found and I think reasonably so but that's not a fabrication that's looking at what two people have said and concluding that one is a liar I could go through you know example by example but in each instance that's essentially what happened here so the last chance agreement was premised on mr. cologne's section 7 activity the board found that he did not lose the protection of the act in filing those grievances and found that the discharge was unlawful I will note for your honors that the discharge did not turn on an Atlantic Steel analysis Atlantic Steel was not invoked in that analysis and so insofar as the court is concerned with the board's change of that standard it does not does not pertain to the discharge of mr. clone only to the discipline of mr. clone that preceded the discharge well let me ask another question suppose we were to disagree about the last chance agreement and we were to agree about the two previous disciplines that substantial evidence supported the idea that those were unfair labor practices what if any remedy would there be since he's no longer on the payroll well he's no longer on the payroll because he's been discharged unlawfully and so well I know that but we but suppose we were to find that to be vacated if you found that the did we make right I understand that well in that instance the court could could either remand if it disagreed with the analysis or simply but why did I enforcement if enforcement was denied us to the discharge the rest of the case would still stand the discipline and the unlawful threat that the board found would still would still and what would that mean that would just mean they post notices all over the yes the board ordered a cease and desist from unfair labor practices including a notice posting and also that the unlawful discipline be removed from mr. clones and one other question about the remedy did did I know I saw a reference and didn't run this down sufficiently did the disk did the order reversing the discharge assert that mr. clone was entitled to anything besides back pay under the Thrive case I do not want to misrepresent the record your honor I believe that it did include a Thrive remedy for for make whole is that the Thrive case that this court heard a couple of months ago or is that another Thrive case yes I believe that's the same case your honor I I would to be certain I would like to check the board's remedy to ensure that the all right thank you thank you your honor's the board was full enforcement mr. Kilbert may it please the court Nathan Kilbert for the intervener Union I'd like to draw the court's attention to mr. cologne who is in the chambers or the in the person most directly affected by the board's decision and your all's decision in this matter well he didn't have to refuse to sign the last-chance agreement that's true your honor had he signed the last-chance agreement he would have been subject to future discharge without the possibility of filing a grievance he would have been in various ways let me ask you was there no one else at the plant who could take over the filing of grievances there are other Union officials at the plant what what I said or what I was intending to say your honor was that he could be under that last-chance agreement terminated for any infraction of the rules and no one in the Union could file a grievance on his behalf that's what the last-chance agreement was intended to restrict and that last-chance agreement was unlawful that's under the contract nobody there's nothing to say that's contrary to the contract though right between the Union and the company it's only unlawful according to the board because it was an unlawful because it was unlawfully motivated that's what you say yes and I would like to focus and pick up on the issue that you all were just discussing with general counsel's counsel and that is the termination we have this situation where to take the example of the sabotage accusation we have what the representative admits was a one person's word against another situation which they concluded meant that because their person denied it he Mr. Cologne must have intentionally fabricated it it's worth noting that the administrative law judge who heard testimony from both men credited Mr. Cologne it's hard to fabricating any fact sabotage is a pretty clear people may differ on insurrection but sabotage is pretty understandable in layman's terms I think the the issue is not whether what happened qualified as sabotage but whether someone said over the radio that there was that employees had maybe I could yeah well there were three or four instances true though and several and at least two of them were contradicted by fellow union members right your honor the there is a tendency among individuals who are interviewed by various people in the course of an investigation sometimes they might tell one person investigating a situation that they remembered it one way and another another that's hardly evidence of intentional falsification but how are we ever going to have that evidence it's kind of a nice circle isn't it that there can't be any intentional misrepresentation because well this person might have told somebody two different things with respect your honor the individual the union employee who gave the diverging accounts was not called by the company as a witness and so had that individual testified I never told Mr. Cologne these statements he attributes to me that would be pretty good proof of that there's no finding that those people were not telling the truth though I mean you're now twisting what the ALJ found because the ALJ found that that the facts did not align with the grievance so therefore those employees were that the ALJ is not discrediting what the company interpreted it is putting a different spin on it to say it wasn't quote his grievance statements on his conversations with affected employees and with other employees in the areas that testimony was credited well let me just ask when when a grievance is of a series of grievances because this was a series and maybe maybe maybe these grievances were provoked because suddenly he was screwing off off his duties and closing the his area to shut down for two days and ruining a half million gallons of some precursor component maybe he was worried about his own job and he thought well I'm a union which is exactly what mr. Griggs said he's a union guy you can't fire him you know I mean the ALJ didn't find that but he files this series of grievances a bunch of which have turned out to have no merit whatsoever don't you acknowledge that it's disruptive to the employment environment when the laborers are being asked all the time did you say this did you say that I mean it creates an atmosphere of suspicion of mutual distrust doesn't it your honor a grievance filing is a core activity protected by the act that is a core function of collective bargaining like any of us filing a lawsuit we may be aggrieved by somebody but we don't file a lawsuit unless we think we have something and you just don't try to it's not the purpose of the Union to continually disrupt the environment right your honor the the analogy to a lawsuit is an instructive one here I believe that mr. Cologne's conduct acting as a union representative not too differently from an attorney his conduct here falls far short of something that would be sanctionable under rule 11 I think that's fundamental to the analysis of the termination issue I see my time has expired no I have one other question did he achieve other did the board order other remedies according to thrive your honor I believe that no specific other remedies were ordered by the board pursuant to thrive I believe the order the amended order here refers to thrive to the extent that there are other pecuniary losses that might be compensable under thrive I believe that that would be those losses would be identified in the compliance proceeding okay thank you your honor it did order that possibility I believe that's I thank you okay mr. cup just just a few points regarding thrive and footnote to align the last verse to the second opinion that the board did address the thrive issue and so that's in footnote put to that that opinion one thing I want to emphasize here is that the last chance agreement that was issued to mr. Cologne came after well after multiple instances of mr. Cologne submitting false information in fact one issue is he submitted a grievance on behalf of two gentlemen by the name last name of Zamora and fobs he submitted a grievance on their behalf they were interviewed they said that they did not want a them work in contradiction to the collective bargaining agreement and after the company conducted extensive investigation and as you mentioned spent a considerable amount of time running these issues down mr. Cologne says oh never mind I was misinformed I'm going to withdraw the grievance there were several instances of that the last chance agreement recounts those instances there were four instances or so that are set forth in the last chance agreement that's that's part of the record and it was simply to say mr. Cologne you cannot submit false information through the grievance process that is not proper keep in mind that he also was disciplined twice formally disciplined for work performance issues he filed grievance on zone those issues and the region specifically found that those weren't unfair labor practice you mean when you say the region you mean the General Counsel right well at the you know RB well it was it was region 16 who was how come those were not specifically referenced in the LCA well they well they were part of the the progressive discipline keep in mind there's plant rules here that the company had General Counsel Annette not once argued that the which governs conduct by employees were ever at issue in this case what was the focus of the last chance agreement was the continued submission of falsified information through the grievance process that caused the company to run through numerous traps interview all types of folks and it was like mr. Cologne you can't do that there were plenty of grievances that he filed that were eat that went through the process that were upheld the company did not take action because of that the company had a long history of working with mr. Cologne on those grievances but the last chance agreement was their way of saying look you cannot do this any further he didn't even read it you can't issue this to me I'm a union supporter and if you do issue it to me it's an unfair labor practice charge General Counsel bought into that argument and what we're saying is that a company can't be hamstrung like that with employees who engage in that sort of conduct last point I want to make is that before the Supreme Court right now are two cases dealing with Chevron deference that's the low Lopez bright industries and relentless cases dealing with whether the long-standing Chevron deference doc doctrine is going to be upheld or jettisoned and by all accounts least by my reading looks like the majority of the Supreme Court is and I would respectfully submit that before any decision is made in this case that we wait to see what the Supreme Court rules on Chevron deference because what is throughout the argument at least in the breeze is that the this court needs to give the difference that the board has always had and that they shouldn't question their policymaking or decision-making so we have that decision coming down it should be come down by the end of June I guess by the end of the term let me I mean just pursue that I bet at least so your argument would be if if they overrule Chevron that arguably at general weight Atlantic Steel is inconsistent with 10c of the act could be and well I would and well wait a minute I'm sorry but right line is okay well yes well right line yes I do believe right line to be okay but I would I would I would submit judge that you have us back if if that if after the Supreme Court if they do jettison the Chevron deference and it does impact the case of course the court can look at that and make the decision whether it has any impact on this case but I don't know how they don't know how the court's going to rule I just I didn't I'm reading the tea leaves like everybody else I personally never make predictions yes but aside from that when you say that I mean this is would this be a novel holding that the Union can file repeated grievances with that get dismissed or withdrawn and yet the Union cannot be sanctioned in any way for doing that no wouldn't be a novel holding I don't believe all the court was do this his his duties as a union steward and as part to submit grievances that didn't contain false information well but in saying I mean is it correct that they ruled on the right line test and this part of it is regarded I don't believe so I don't think I'm think the judge the administrative law judge and the board completely disregarded right line but they say alternatively that this would not survive right line but I guess we don't know the answer since they never applied it well they never they never applied it and and going back to the due process are you and they never gave line the last chance to argue it okay okay you're done thank you all right thank you